```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

Dale Richard Lutz, Jr.,          :

    Plaintiff,                   :

  v.                             :     Case No. 2:14-cv-725

                                  :     JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,       Magistrate Judge Kemp
                                  :
    Defendant.

### REPORT AND RECOMMENDATION

### I.  Introduction

Plaintiff, Dale Richard Lutz, Jr., filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on February 1, 2011, and alleged that Plaintiff became disabled on September 27, 2008.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on October 1, 2012.  In a decision dated January 24, 2013, the ALJ denied benefits.  That became the Commissioner's final decision on May 6, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on September 9, 2014.  Plaintiff filed his statement of specific errors on October 9, 2014, to which the Commissioner responded on January 29, 2015.  Plaintiff filed a reply brief on February 16, 2015, and the case is now ready to decide.

### II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 41 years old at the time of the administrative hearing and who has a GED, testified as follows.  His testimony appears at pages 41-72 of the administrative

record.

Plaintiff last worked in 2008. He was employed while in jail washing dishes, a job he did for three months that year and six months during the prior year. When out of jail, he worked as a forklift operator and machine operator in a factory that made fertilizer. That job involved lifting up to 30 pounds, with constant standing and walking. He had also been a laborer at a concrete factory, a construction laborer, and a maintenance man. He described a number of other short-term jobs as well, most of which involved manual labor. His back problems started at the fertilizer company. He could no longer do that job due to the lifting, moving, and standing requirements.

Plaintiff was then asked about his drug use. He admitted to still using marijuana several times per week, but said he had not used "hard drugs" since the 1990s. He also testified about having been in a truck accident in the early 1990s which he thought contributed to the back problems he experienced later. Plaintiff said that his back hurt constantly even with medication. His pain interfered with sleep. He had to change positions every fifteen to twenty minutes. Plaintiff's treatment had included physical therapy and epidural injections, neither of which helped to reduce the pain.

In terms of what aggravated his pain, Plaintiff said that sitting too long, standing too long, or lifting all made it worse. He could help carry groceries from the car to the house, but would not be able to stand and hold heavy items. He took out trash but did few other household chores. He was unable to do activities he had done before. He did describe making small wooden platforms for a craft that his girlfriend made and sold, but said he could work at that task for only fifteen or twenty minutes before having to take a break. Plaintiff believed he could not work even a half day due to pain.

III. The Medical Records

The medical records in this case are found beginning on page 258 of the administrative record. The pertinent records - those relating to Plaintiff's two statements of error - can be summarized as follows.

The first 133 pages of medical records reflect treatment which Plaintiff received from the Ohio Department of Rehabilitation and Correction while he was incarcerated. They show, generally, that he was treated for back pain and chronic bronchitis as well as for headaches and asthma. During his 2010 incarceration, he also reported symptoms from gastroesophageal reflux disease. (Tr. 258-390).

Plaintiff was seen by Dr. Sethi on May 24, 2011, for a consultative physical examination. He reported suffering from chronic back pain, asthma, arthritis, and knee problems. On examination, he showed a normal gait and the ability to walk on tiptoe and heels and to squat. He had full range motion in all joints and extremities but a slightly reduced range of motion in his back. Straight leg raising was negative, and spinal x-rays were normal. Dr. Sethi found that all of Plaintiff's physical work abilities were normal, as were his hearing, speaking, and traveling. (Tr. 407-09).

Dr. Murrell, who provided treatment to Plaintiff in 2010 or 2011, completed a basic medical form in 2011. On that form, she indicated that his problems included an ongoing dental infection and a history of clavicle pain. She stated that he had an unlimited ability to sit, stand, and walk, and was not significantly limited in any work-related activities. (Tr. 424-26). She filled out a similar form in May, 2012. At that time, Plaintiff's diagnoses had changed to lumbar degenerative joint disease and a history of COPD. She noted that his lumbar spine was minimally abnormal, with an MRI showing mild degenerative

changes, and that an EMG was normal. On this form, she estimated that he could stand or walk for one hour at a time, up to four hours in a day, and could sit for two hours at a time, up to six hours in a day. He had a moderate limitation in pushing and pulling and a marked limitation in bending. Other postural activities were not affected. She based her opinions on "exam" and "review of records." (Tr. 499-501).

The only consultative psychological examination was done by Dr. Sarver. He interviewed Plaintiff on November 3, 2011. Plaintiff reported being unable to work due to "pain and misery." Plaintiff described his substance abuse history to include abusing alcohol in the past, smoking marijuana daily, and using pain pills whenever he could get them. His mood was subdued and his eye contact was poor. Plaintiff reported depression but not anxiety. His memory was intact but his insight appeared to be poor. Dr. Sarver described Plaintiff's adult history as "significant for intense and unstable interpersonal relationships." He rated Plaintiff's GAF at 55 and diagnosed an adjustment disorder with mixed anxiety and depressed mood, polysubstance dependence, and a personality disorder not otherwise specified. Dr. Sarver thought Plaintiff was a reliable reporter. He saw limitations in the areas of carrying out job instructions that were more complex, in maintaining concentration and attention (but that was primarily due to substance abuse), getting along with others in the work setting, and adapting to work pressures due to problems with containing anger, managing frustration, and controlling impulses. (Tr. 431-38).

### IV. The Vocational Testimony

Dr. Finch was the vocational expert in this case. His testimony begins on page 72 of the administrative record.

Dr. Finch testified that Plaintiff's past work included machine operator, construction laborer, building maintenance

-4-

repairer, general laborer, factory laborer, and pest control worker. All of these jobs were either unskilled or semi-skilled except for the maintenance worker and pest control worker, which were skilled positions, and they ranged from the light to very heavy exertional levels.

Dr. Finch was then asked some questions about a hypothetical person who could work at all exertional levels but who was limited to the performance of simple, repetitive tasks performed in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. According to Dr. Finch, those limitations were consistent with working as either a general laborer, a factory laborer, or a construction laborer. If the person were also limited to medium work and had to avoid concentrated exposure to environmental irritants or chemicals, and further could tolerate only occasional interaction with the public and coworkers, he could not do any of Plaintiff's past work. However, such a person could work as a grocery stocker, laundry worker, or dump truck driver.

Next, Dr. Finch was asked about a hypothetical person limited to work at the light exertional level with an option to sit or stand, provided he or she would not be off task more than ten percent of the workday. The person had various postural limitations as well, and had the other nonexertional limitations previously described. Dr. Finch testified that such a person could work as an assembler, bench inspector, or order clerk. Other jobs such as production helper, folder, and tagger could be done if the sit/stand option were eliminated.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 10-19 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012.  Next, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 27, 2008.  Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including asthma, gastric esophageal reflux disease, degenerative disc disease, adjustment disorder with anxiety and depression, and chronic bronchitis.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the medium exertional level, being able to lift no more than fifty pounds occasionally and lift and carry up to 25 pounds occasionally and to stand, walk, and sit for up to six hours each during a workday.  Additionally, he had to avoid concentrated exposure to environmental irritants such as fumes, gases, odors, dust, poor ventilation, and chemicals.

The ALJ found that, with these restrictions, Plaintiff could not do his past work.  However, he also determined that Plaintiff could do certain jobs identified by the vocational expert, including grocery stocker, laundry worker, and dump truck driver.  The ALJ further found that such jobs existed in significant numbers in the State and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

### VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred in his evaluation of the medical evidence of record (particularly the opinion of Dr. Murrell, a treating source, but also the opinion of Dr. Sarver); and (2) the

ALJ did not make a proper credibility finding.  These issues are evaluated under the following legal standard.

  <u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

                     A.  <u>Medical Opinions</u>
                  1.  <u>Physical Functional Capacity</u>

  Plaintiff's first argument concerning medical opinions is directed to the ALJ's discussion and evaluation of Dr. Murrell's views.  As noted above, the first form which Dr. Murrell completed in 2011 contained no limits on Plaintiff's ability to

-7-

meet the physical demands of work. As to the second, which sets forth limitations which are more restrictive than those found by the ALJ, Plaintiff asserts that the ALJ did not explain, in sufficient detail, why that opinion was given less than controlling weight, and that the reason given by the ALJ for discounting it - the lack of supporting objective medical evidence - is simply incorrect. As always, the Court begins this portion of its analysis by scrutinizing how the ALJ came to his conclusions.

The ALJ actually assigned little or no weight to both of Dr. Murrell's opinions, although, interestingly, he discounted the second opinion in part because "there does not appear to be any basis for the change in the doctor's opinions" from the first to the second. (Tr. 17). He also relied on the fact that Dr. Murrell's "exam notes state the claimant's MRI show (sic) mild degenerative changes and there are no recent films of the claimant's hip." Id. Finally, he explained that he gave no weight at all to the 2012 opinion because "it is not supported by anything in the medical record." Id. The ALJ did not rely on the state agency reviewer's decision (which found no severe impairment), giving it little weight because "medical records were submitted subsequent to the state's opinions." Id. He also gave little weight to Dr. Sethi's consultative opinion, calling it "somewhat vague" and noting that it did not "explain the claimant's abilities function by function" nor address the limitations found in the range of motion studies done on Plaintiff's back. Id.

The Commissioner defends this somewhat cursory evaluation of all of the opinion evidence concerning Plaintiff's physical capacity by arguing that the ALJ reasonably weighed all of the opinions and evidence concerning physical functioning, and that the ALJ correctly noted the absence of evidence to support Dr.

-8-

Murrell's change of opinion. Perhaps there is substantial evidence to support the ALJ's ultimate decision that Plaintiff could perform essentially a full range of medium work, but the reasoning process by which the ALJ arrived at that decision is simply insufficient to allow the Court to affirm it.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

There is a clear articulation issue in this case. First, the Court notes that although the Commissioner points to certain comments made by the ALJ about the medical evidence at Page 15 of the record, the ALJ never tied those comments to his rejection of Dr. Murrell's opinion. He made only the general statement that

her opinion "was not supported by anything in the medical evidence of record." Given that the record includes some abnormal findings on both x-ray and MRI, that Dr. Sethi noted limitations in range of motion of the spine which the ALJ considered to have some significance, and that Plaintiff had sought treatment for back pain for years, including undergoing epidural injections and physical therapy and being prescribed narcotic pain medication, that general statement is neither entirely accurate nor specific enough to allow either the Court or the Plaintiff to understand the ALJ's reasoning process. The courts in this Circuit have held, time and again, that "when the ALJ fails to give good reasons for rejecting the opinion of the treating physician, reversal and remand to the Commissioner is required — even if substantial evidence otherwise exists in the record to support the Commissioner's decision," see Mitchell v. Comm'r of Social Security, 330 Fed.Appx. 563, 569 (6th Cir. June 2, 2009), and that ""it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." Friend v. Comm'r of Social Security, 375 Fed. Appx. 543, 552 (6th Cir. Apr. 28, 2010). This record lacks that explanation.

   The ALJ's decision cannot be rescued by the fact that Dr. Murrell's earlier opinion was less favorable; he cannot have both given that opinion little weight and then relied on it as evidence that the later opinion was incorrect because they differed. Further, it is clear that Dr. Murrell examined and treated Plaintiff several times in between rendering her two opinions and that she reviewed additional test results, so it is not accurate to say that the record on which she expressed her views had not changed at all. Perhaps the information she gathered in the interim did not fully support her second opinion,

but that is different from saying that the first opinion, which the ALJ seemed skeptical of, nevertheless provided him with a good reason for discounting the second.

This is not a case, moreover, where the ALJ cited to either the state agency reviewer's opinion or the consultative examiner's opinion as a reason to give less weight to Dr. Murrell's views.  In fact, he gave little or no weight to either of those opinions, apparently finding little to rely on in any of the medical opinions.  Sometimes, that approach is acceptable, and an ALJ can craft a residual functional capacity finding by blending the results of several medical opinions, but that does not appear to be what happened here.  In any event, it cannot overcome the failure to articulate, in a way specific enough to understand and review, the reasons for giving absolutely no weight to the treating source's opinions.

The ALJ did elicit testimony from the vocational expert that someone who had more limitations than those which the ALJ ultimately found to exist could still work.  It is not clear, however, which of those functional limitations the ALJ would have adopted had he not erred in his evaluation and articulation of the reasons for rejecting the various medical opinions, and the Commissioner has not argued harmless error.  For these reasons, the Court recommends remand on this ground.

2. <u>Mental Functional Capacity</u>

The second part of the first assignment of error deals with Dr. Sarver's consultative examination and opinion.  Plaintiff makes only brief reference to this issue in the statement of errors, but adds to his argument in the reply, contending that the ALJ cannot reject a psychological evaluation simply because the examiner places some reliance on what the claimant has told him.  Plaintiff also faults the ALJ for substituting his own interpretation of the evidence for that of Dr. Sarver.  The Commissioner responds by arguing that the ALJ's decision to

assign little weight to Dr. Sarver's opinion was reasonable because some of the limitations noted (including the GAF score) took Plaintiff's substance abuse disorder into account, and that Dr. Sarver's evaluation of Plaintiff's ability to relate to others was inconsistent with Plaintiff's own statements at the interview as well as Dr. Sarver's own observations about their interaction.

One issue that neither side mentions in the briefs is that the ALJ found Plaintiff to suffer from a severe psychological impairment (adjustment disorder with anxiety and depression) but he did not include any limitations arising from that disorder in his residual functional capacity finding. By definition, a severe impairment is one which imposes work-related limitations. The only mention of such limitations in the section of the ALJ's decision relating to mental residual functional capacity is the statement that Plaintiff's mental impairment would not "keep him from working at least an unskilled job." (Tr. 16). That statement is not a residual functional capacity finding, and the absence of a specific finding on mental residual functional capacity is puzzling.

Turning to Plaintiff's specific arguments, the ALJ's rationale concerning the weight given to Dr. Sarver's opinion is as follows. First, he noted that Dr. Sarver rated Plaintiff's prognosis as poor, but that was due to his substance abuse disorder. (Tr. 17). He then discounted Dr. Sarver's opinion about Plaintiff's ability to relate to others as "based on the claimant's self-report at the examination" and "not supported by the medical evidence of record as a whole." Id. However, the ALJ also gave little weight to a state agency reviewer's opinion to the effect that Plaintiff's mental ability to do work was normal (this was the reviewer who assessed Plaintiff's physical capacity), concluding that the assessment was "somewhat vague" and that it did not "explain the claimant's abilities function by

function." Id.

The only other medical evidence in the record about Plaintiff's mental impairment which the ALJ commented on, and which could form the basis for his statement that Dr. Sarver's views were not supported by the record, was Dr. Sarver's own evaluation report. The ALJ did discuss the fact that Plaintiff had not had any mental health treatment since his alleged onset date and that his testimony indicated that he did not feel the need for ongoing treatment (Tr. 16), but the only medical evidence he referred to in that discussion of the evidence came from Dr. Sarver (Tr. 16-17). The ALJ also apparently rejected Dr. Sarver's diagnosis of a personality disorder, since he did not find that to be a severe impairment, as well as Dr. Sarver's ultimate conclusions as to Plaintiff's residual functional capacity.

There is really no explanation given for the ALJ's failure to describe the specific, function-by-function limitations caused by the one mental impairment which the ALJ found to be severe. Further, it cannot be discerned on this record why the ALJ rejected many of Dr. Sarver's conclusions as to other impairments or other limitations. Although the ALJ is under no duty to articulate good reasons for the rejection of a consultative examiner's views, see Nolan v. Comm'r of Social Security, 2013 WL 1787386, (S.D. Ohio Apr. 25, 2013), adopted and affirmed 2013 WL 4831029 (S.D. Ohio Sept. 10, 2013), there must still be evidence in the record from which the Court can conclude that the ALJ performed the evaluation of such opinions which is mandated by regulation. Here, apart from the statement that Dr. Sarver relied on Plaintiff's self-report of symptoms - something not unusual or improper for a psychologist to do, see, e.g., Blankenship v. Bowen, 874 F. 2d. 1116 (6th Cir. 1998) - and the implied conclusion that Dr. Sarver's report was self-contradictory, there is no evidence that the ALJ actually applied

the required six-factor test set out in §404.1527(c) to Dr. Sarver's opinion.  See Sommer v. Astrue, 2011 WL 766184, *3 (E.D. Tenn. Feb. 25, 2011)(remanding case because the court could not determine, based on inadequate explanations of the reasons given for rejecting a consultative examiner's opinion, whether the ALJ's decision was based on substantial evidence).  On remand, further consideration of Dr. Sarver's opinion, and a determination of Plaintiff's mental residual functional capacity, will be required.

### B.  Credibility

Plaintiff's other argument concerns the ALJ's credibility assessment.  Because the case must be remanded for other reasons, it is not strictly necessary to address this issue.  However, the Court notes that while there are certainly various factors in the record, cited by the Commissioner, which could have led the ALJ to discount some of Plaintiff's testimony, it is not clear that the ALJ actually cited any factors other than disagreement between the objective evidence and Plaintiff's reports of pain, and the fact that Plaintiff has a history of substance abuse.  On remand, the ALJ will have an opportunity to clarify his reasons for finding Plaintiff to be less than a credible reporter of symptoms, taking into account the various factors set forth in SSR 96-7p.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which

-14-

objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

    The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                            /s/ Terence P. Kemp
                                            United States Magistrate Judge