**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DALE RICHARD LUTZ, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:14-cv-725** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | **Magistrate Judge Kemp** |
| | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on the Commissioner's Objection (Doc. 20) to the

Magistrate Judge's April 28, 2015 **Report and Recommendation** (Doc. 12), recommending that

the Court sustain the Plaintiff's Statement of Errors (Doc. 9) and remand this case to the

Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four. Upon

independent review by the Court, and for the reasons set forth below, Commissioner's

Objections are hereby **OVERRULED.**   The Court **ACCEPTS** and **AFFIRMS** the Magistrate

Judge's **Report and Recommendation**.

## I.      BACKGROUND

Plaintiff Dale Richard Lutz, Jr. filed for Disability Income Benefits on February 2, 2011,

and for Supplemental Security Income disability benefits on March 18, 2011, alleging disability

beginning September 27, 2008. His applications were denied initially, and upon reconsideration.

After a hearing on October 1, 2012, the Administrative Law Judge ("ALJ") denied benefits on

January 24, 2013.

In his opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disabilities benefits claim. See 20 C.F.R. § 404.1520.[1] The ALJ determined at step one that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012, and that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At step two of the sequential evaluation, the ALJ found that Plaintiff had the following severe impairments: asthma, gastric esophageal reflux disease, and degenerative disc disease, adjustment disorder with anxiety and depression, and chronic bronchitis.  At step three, the ALJ determined that these impairments did not, at any time, meet or equal the requirements of any

---

[1] The five sequential steps are as follows:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

20 C.F.R. § 404.1520(a)(4).

section of the Listing of Impairments. Prior to step four[2], the ALJ found the Plaintiff has the following residual functional capacity:

> the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant is further limited to standing/walking for about six hours and sitting for up to six hours in an eight-hour work day, with normal breaks; lifting no more than 50 pounds occasionally; and lifting/carrying up to twenty-five pounds occasionally. In addition, the claimant must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, and gases; poorly ventilated areas; and chemicals.

Accordingly, at step four, the ALJ found the Plaintiff could not perform his past work, involving manual labor. Finally, at step five, he found that although Plaintiff could not do his past work, he could do certain jobs identified by the vocational expert, which existed in significant numbers in the State and national economies.

The Appeals Council denied Plaintiff's request for review on May 6, 2013, making the ALJ's decision final.  Plaintiff filed the instant action in the U.S. District Court, Southern District of Ohio, on July 3, 2014. On October 9, 2014, the Plaintiff filed a statement of specific errors, contending that the ALJ erred by: (1) failing, at step three, to give proper weight to and a good reason for failing to credit a 2012 opinion of Plaintiff's treating physician, Dr. Murrell; (2) giving "little weight" to the only opinion of an examining psychologist of record, Dr. Sarver, thereby impermissibly substituting his own lay opinion for that of a qualified expert; and (3) failing to give specific reasons for finding Lutz's pain allegations were not credible, in violation of the requirements of SSR 96-7p and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

On April 28, 2015, the Magistrate Judge issued a Report and Recommendation, sustaining the Plaintiff's statement of errors in its entirety, and recommending remand. (Doc.

---

[2] "Before we go from step three to step four, we assess your residual functional capacity.... We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps." 20 C.F.R. § 404.1520(a)(4); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 28, n. 3 (6th Cir. 2009).

19).The Commissioner objected to the Magistrate Judge's Report and Recommendation on May 11, 2015. The relevant facts concerning the Plaintiff's medical records, as well as the ALJ's opinion, are thoroughly set forth in the Magistrate Judge's Report and Recommendation, (Doc. 19); those facts that are relevant to this Court's decision will be incorporated in the analysis below.

## II.     STANDARD OF REVIEW

This Court, upon objection, is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). This Court's review "is limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Ellis*, 739 F.2d at 248; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the Court would have arrived at a different conclusion. *Elkins v. Sec'y of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013), *reh'g denied* (May 2, 2013).

### III.    ANALYSIS

The Commissioner objects to the Magistrate Judge's determinations that the ALJ erred procedurally in his analysis and weighing of the opinions of treating physician Dr. Murrell and consultative psychological examiner, Dr. Saver. The Court will take each objection in turn.

### A. Dr. Murrell

In Plaintiff's first assignment of error he argued that the ALJ improperly assigned little or no weight to Plaintiff's treating physician Dr. Murrell's opinions regarding Plaintiff's physical functional capacity. The Magistrate Judge sustained the contention, finding the ALJ had failed to meet his procedural duty to provide a "reasoned explanation" of his determination that Dr. Murrell's opinions should be afforded little to no weight. *See Wilson v. Comm'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). The Commissioner objects to the Magistrate Judge's rationale, arguing that when read as a whole, the ALJ's opinion shows that the ALJ considered medical evidence showing that Plaintiff had relatively minor physical issues, thereby substantiating the ALJ's ultimate decision to discount Dr. Murrell's May 2012 opinion that Plaintiff had some physical limitations in his movement.

5

### 1. Standard for Weighing Treating Physicians' Opinions

Generally, the ALJ "must give a treating source opinion controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). As a Social Security Ruling explains, however, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2 (July 2, 1996)). That being said, it is well established that "if the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. (citing *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2)). In sum, the ALJ must follow a two-step analysis when determining the proper weight to afford a treating physician's opinions.

Further, "closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion. 20 C.F.R. § 404.1527(d)(2). Those good reasons must be 'supported by the evidence in the case record, and must be *sufficiently specific to make clear* to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight.'" *Id.* at 406-07 (emphasis added).

Lastly, according to *Wilson*,

> where the ALJ fails to give good reasons on the record for according less than
> controlling weight to treating sources, we reverse and remand unless the error is a
> harmless *de minimis* procedural violation. *See Wilson,* 378 F.3d at 547. Such
> harmless error may include the instance where "a treating source's opinion is so
> patently deficient that the Commissioner could not possibly credit it," or where
> the Commissioner "has met the goal of ... the procedural safeguard of reasons."
> *Wilson,* 378 F.3d at 547. However, the ALJ's failure to follow the Agency's
> procedural rule does not qualify as harmless error where we cannot engage in
> "meaningful review" of the ALJ's decision. *Id.* at 544.

*Blakley*, 581 F.3d at 409.

## 2.  Application to Dr. Murrell's Opinions

The ALJ reviewed some of Dr. Murrell's 2011 and 2012 treatment findings at pages 15

and 17 of the decision. At page 15, the ALJ makes brief mention of some portions of medical

records showing Dr. Murrell's treatment of the Plaintiff. The ALJ notes that an x-ray of the

Plaintiff's lumbar spine taken in late 2011 shows the claimant had mild degenerative disc

disease. The ALJ concluded that a 2012 x-ray showed no significant change in appearance of the

lumbar spine, since both the 2011 and 2012 impression showed mild mid to lower lumbar

degenerative disc disease. Then, appearing at page 17 is the ALJ's analysis and conclusion of the

weight he would afford Dr. Murrell's 2011 and 2012 evaluations of the Plaintiff:

> The undersigned gives little weight to the opinions of Dr. Murrell. (F4 and 8F)
> Dr. Murrell is a family doctor who has treated the claimant in 2011 and 2012. In
> 2011 the doctor opined that the claimant's standing/walking, sitting, and
> lifting/carrying are not affected by his pain. In addition she found that various
> postural and repetitive foot movements were not significantly limited. (4F) In
> May of 2012, Dr. Murell opined that the claimant's standing/walking, sitting, and
> lifting/carrying were affected. The doctor also found the claimant was moderately
> limited in pushing/pulling and markedly limited in bending. She notes that her
> exam and review record is what this opinion is based on. However, her exam
> notes state the claimant's MRI show (sic) mild degenerative changes and there are
> no recent films of the claimant's hip. (8F). There does not appear to be any basis
> for the change in the doctor's opinions. The undersigned gives the doctor's
> opinion from 2011 limited weight as the subjective complaints and MRI showing

mild changes would indicate some limitations. (4F) The opinion from May of 2012 is given no weight, as it is not supported by anything in the medical evidence of record.

In addition to these conclusions, the ALJ did not rely on the state agency reviewer's decision (which found no severe impairment), giving it little weight because "medical records were submitted subsequent to the state's opinions." He also gave little weight to the consultative examiner's, Dr. Sethi's, opinion, calling it "somewhat vague" and noting that it did not "explain the claimant's abilities function by function" nor address the limitations found in the range of motion studies done on Plaintiff's back.

In evaluating Plaintiff's assignment of error, the Magistrate Judge did not reach the question of whether the ALJ erred in giving little to no weight to Dr. Murrell's opinions. Instead, pursuant to *Wilson*, the Magistrate Judge properly concluded that regardless of the question of how much weight should ultimately be afforded to Dr. Murrell's opinions, the ALJ erred by failing to provide a reasoned explanation, pursuant to the six statutory factors under 20 C.F.R. § 404.1527(d)(2)), for why he gave little weight to Dr. Murrell's opinions as a whole, and no weight to Dr. Murrell's May of 2012 opinion. (Doc. 19, p. 9, citing *Wilson*, 378 F.3d 541, 544); *see also Blakley*, 581 F.3d at 408 ("Even assuming *arguendo* that the ALJ correctly reached her determination that [the treating physician] should be discredited, the ALJ's summary rejection of [him] without explaining the weight given his opinions falls short of the Agency's own procedural requirements[.]").

The Magistrate Judge laid out four weaknesses in articulation that demonstrated why the ALJ's dismissal of Dr. Murrell's opinions fell below the "good reason" standard articulated in *Wilson*. 378 F.3d at 547at 547. First, the Magistrate Judge found that "although the Commissioner pointed to certain comments made by the ALJ about the medical evidence at page

15 of the record [Murrell's 2012 evaluation of Plaintiff], the ALJ never tied those comments to his rejection of Dr. Murrell's opinion." Second, the ALJ failed to provide any reasoned explanation for his conclusion that Dr. Murrell's May 2012 opinion that claimant's standing/walking, sitting, and lifting were affected, should be afforded "no weight" because "it [was] not supported by anything in the record." The Magistrate Judge noted that this general statement was neither completely accurate nor specific enough considering: (1) abnormal findings on both x-rays and MRIs in the record; (2) that Dr. Sethi noted limitations in range of motion of the spine which the ALJ considered to have some significance; and (3) that Plaintiff had sought treatment for back pain for years, including by undergoing epidural injections and physical therapy and being prescribed narcotic pain medication. Third, the Magistrate Judge reasoned that the ALJ's rejection of Dr. Murrell's May 2012 opinions could not be rescued by the fact that Dr. Murrell's 2011 opinion was less favorable—the ALJ could not sensibly have given the 2011 opinion little weight because it contradicted "subjective complaints and MRI showing mild changes would indicate some limitations," and then relied on it as evidence that the May 2012 opinion showing worsening symptoms was not credible. Finally, the Magistrate Judge determined that this was not a case in which the ALJ properly discounted Dr. Murrell's opinion because it was incompatible with the state agency reviewer's opinion or the consultative examiner's opinion. While such an approach could have been acceptable in another case, it could not be here, where the ALJ granted little or no weight to both of these opinions. *See supra*.

This Court adopts the Magistrate Judge's thorough rationale regarding why, under *Wilson*, the ALJ's evaluation of the treating physician's opinion was not "sufficiently specific" enough to make clear to this Court why it should be afforded no weight. The Magistrate Judge articulated well, and it needs no repeating, that the ALJ's determination was rife with illogical,

internal inconsistencies, as well as flatly inaccurate statements, all of which amounted to a failure to give good reason for a complete disregard of Dr. Murrell's May 2012 opinion. Further, it is uncontested that the ALJ did not address clearly all six factors under 20 C.F.R. § 404.1527(d)(2).

Finally, the deficiencies in the opinion were not *de minimus*. First, due to the inconsistencies and inaccuracies in the ALJ's logic, the ALJ's decision was not "sufficiently specific to make clear" that it accurately evaluated Dr. Murrell's opinion, and thus the ALJ's opinion is not susceptible to "meaningful judicial review." *Blakley*, 581 F.3d at 409 (finding incomplete weighing of treating source opinions did not amount to a *de minimis* procedural violation where court could not engage in meaningful judicial review because the ALJ's opinion was not sufficiently specific to make clear that the ALJ had "recognized and evaluated" the plaintiff's relationship with treating physicians).  Further, while the ALJ may have ultimately concluded that Dr. Murrell's opinions should be afforded less weight, there is "no evidence in the record" that Dr. Murrell's 2012 evaluation of the Plaintiff was "'so patently deficient that the Commissioner could not possibly credit it.'" *Id.* (citing *Wilson,* 378 F.3d at 547).

In its objection to the Magistrate Judge's determination, the Commissioner points this Court to the ALJ's summary of medical record evidence at page 15 of his decision, which includes diagnostic testing showing that the Plaintiff had only minimal physical limitations, contrary to Dr. Murrell's 2012 findings that Plaintiff had a variety of limitations in his movement. The Commissioner argues that based on the ALJ's summary of medical evidence on page 15, the Magistrate Judge is incorrect to insist that the ALJ had to discuss this evidence in a specific section of his decision in order for it to constitute support for the weight given to Dr. Murrell's May 2012 opinion. Instead, the Commissioner insists that the Magistrate Judge should

have read the ALJ's decision as a whole, citing to *Bradford v. Sec'y of Dep't of Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986).

The Commissioners argument is unpersuasive. First, the portion of *Bradford* to which the Commission cites merely is an application of the substantial evidence standard used to review on appeal an ALJ's otherwise procedurally sound decision. While the reviewing court is required to consider the record as a whole when assessing whether the Commissioner's findings are supported by substantial evidence, *see Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978), the notion that the court is to view the ALJ's decision as a whole when determining whether the ALJ erred in the five-step sequential evaluation misconstrues the law regarding the proper procedural rules to follow when discrediting a treating source's medical opinion.

Second, as articulated in *Wilson* and *Blakley*, "even if [this Court] were to agree that substantial evidence supports the ALJ's weighing of [Dr. Murrell's opinion], substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error." *Id.* (citing *Wilson,* 378 F.3d at 546 ("[T]o recognize substantial evidence as a defense to non-compliance with § 1527(d)(2)[ ] would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'" (quoting Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001))). Thus, while evidence may exist in portions of the ALJ's decision or the record to support a flat dismissal of Dr. Murrell's 2012 opinion, such a reality does not overcome a determination of reversible error on procedural grounds when an ALJ fails to follow the procedural guidelines for determining the proper weight to grant a treating physician's opinions.

*Blakley*, 581 F.3d at 410 (publishing the decision "as a modest reminder-that the Commissioner must follow his own procedural guidelines in crediting medical opinions").

In sum, like the Court in *Blakley*, "the analysis supplied by the ALJ prevents this Court from finding that the Commissioner's decision is supported by substantial evidence. However, we do not decide today whether there is substantial evidence on the record to award or deny benefits because the Commissioner has discretion over that determination. Instead, we hold that the ALJ failed to follow the applicable procedural requirements in reaching [his] disability determination, which precludes meaningful review." *Id*.

**B. Dr. Sarver**

Plaintiff's first assignment of error also took issue with the ALJ's treatment of Dr. Sarver, a consultative examiner who evaluated Plaintiff's mental impairments. Dr. Sarver rated Plaintiff's GAF at 55 and diagnosed him with an adjustment disorder with mixed anxiety and depressed mood, polysubstance dependence, and a personality disorder not otherwise specified. Plaintiff faulted the ALJ's evaluation for two reasons: (1) the ALJ erroneously discounted Dr. Saver's evaluation simply because the examiner placed reliance of what the claimant told him; and, (2) the ALJ erroneously substituted his opinion of the evidence for the examiners. The Magistrate Judge found that remand was necessary for further consideration of Dr. Saver's opinion and a determination of Plaintiff's mental residual functional capacity for two related but slightly different reasons. First, the Magistrate Judge found error in the fact that he could not discern from the record why the ALJ rejected many of Dr. Sarver's conclusions as to the other impairments or other limitations, including his diagnosis of a personality disorder and GAF of 55. Second, the Magistrate concluded that the ALJ erred procedurally by finding that the Plaintiff suffered from a severe psychological impairment—adjustment disorder with anxiety and depression—but did not include any function-by-function limitations arising from that disorder

12

in his residual functional capacity finding, or use the six factor test set out in Section 404.1527(c) when giving little weight to the examiner's opinion. The Commissioner objects to the Magistrate Judge's decision, arguing that the Magistrate was incorrect in concluding that the ALJ was obligated to include mental limitations in Plaintiff's RFC because he found that the Plaintiff's adjustment disorder was a severe impairment. The Commissioner argues that such a conclusion is especially true where the ALJ finds mild restrictions related to the impairment and a relationship between the impairment and substance abuse.

First, this Court notes that the Commissioner does not object to the Magistrate's Judge's finding that the ALJ erred in failing to provide any reasoning for rejecting Dr. Saver's other diagnosis, namely his diagnosis of a personality disorder. While it is true that a diagnosable impairment is not necessarily disabling, *see Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988), the record at step two does not indicate any consideration of that diagnosis, including whether it is disabling.  This can only be reduced to the ALJ's error in reviewing the record, and demands correction.

Second, the diagnosis of personality disorder should be considered at all steps after step two, whether it is found to be severe or non-severe. As the Sixth Circuit has held, it is

> "legally irrelevant" that some of a claimant's impairments were considered non-severe, when others were found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and should cause the ALJ to consider both the severe and non-severe impairments in the remaining steps. *Astrue,* 266 Fed. Appx. at 457 (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987)). In other words, "[o]nce one severe impairment is found, the combined effect of all impairments must be considered, even if other impairments would not be severe." *White v. Comm'r of Soc. Sec.,* 312 Fed. App'x. 779, 787 (6th Cir. 2009) (referencing 20 C.F.R. §§ 404.1523 and 404.1545(a)(2)).

*Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009).

In terms of the ALJ's treatment of Dr. Saver's opinion and Plaintiff's mental functioning pertaining to the diagnosis of adjustment disorder with anxiety and depression, such requires a thorough review of the facts. At step three, the ALJ concluded the following, pertaining to Plaintiff's mental impairments:

> In activities of daily living, the claimant has mild restriction. The claimant reported that he does all the cooking and can take care of his personal hygiene. The claimant's girlfriend takes care of the cleaning. (5F)

> In social functioning, the claimant has moderate difficulties. The claimant reports that he usually keeps to himself because he does not like to show his feelings. (5F)

> With regard to concentration, persistence or pace, the claimant has mild difficulties. The consultative examiner found the claimant to be interested and motivated, with appropriate attentional pace and persistence.

> As for episodes of decomposition, the claimant has experienced no episodes of decomposition, which have been of extended duration.

Prior to step four, the ALJ considered Plaintiff's mental impairments when fashioning the RFC as follows:

> In regards to the claimant's mental impairments, the medical evidence of record and the testimony of the claimant does not support that the claimant's mental impairment would keep him from working at least an unskilled job. There is no record of any psychiatric treatment since the alleged onset date in the medical evidence of record. The claimant asserted at the hearing that he did counseling when he was on probation. He testified that he completed the treatment and did not think he needed it anymore. The claimant was referred to a consultative examiner by the state agency to evaluate the claimant's mental impairments. The claimant reported that [he] (sic) had abused alcohol in the past, but he has not used any for a month. He also stated that he uses marijuana every day. As stated previously he also reported that he uses [a] (sic) pain pill every day whenever he can get them. He stated that he does not think he can work because of his pain and misery. The examiner assessed the claimant with a global assessment of functioning of 55. (5F) … however, the examiner found the score would likely improve in the absence of substance abuse. The examiner noted the claimant's pace and attention were appropriate and the claimant reported he cooked regularly and did wood working. The claimant did report that he had friends, but did not spend time with them because he did not like showing his feelings. The examiner diagnosed the claimant with adjustment disorder with mixed anxiety and

14

> depressed mood and polysubstance abuse. The examiner noted the claimant's goal
> is primarily to feel better in the short fun (e.g. substance abuse) rather than to
> struggle and eventually get better.

In terms of the weight granted to Dr. Saver's opinion evidence, the ALJ gave "limited weight" to Dr. Saver's opinion. The following includes the entirety of his rationale:

> He found claimant's prognosis to be poor based on the claimant's substance
> abuse. (5F) However, the examiner's functional assessment puts limits on the
> claimant's ability to interact with others. This appears to be based on the
> claimant's self-report at the examination and is not supported by the medical
> evidence of record as a whole.

After this analysis, the ALJ fashioned Plaintiff's RFC, which indicates that Plaintiff can perform a range of medium work, with some additional physical limitations, but the RFC does not include any mental limitations.

The Magistrate Judge determined that the ALJ erred procedurally by finding that the Plaintiff suffered from a severe psychological impairment—adjustment disorder with anxiety and depression—but did not include any function-by-function limitations arising from that disorder in his residual functional capacity analysis, or use the six-factor test set out in Section 404.1527(c) when giving little weight to the examiner's opinion.

The Commissioner objects to the Magistrate Judge's findings on two grounds. First, the Commissioner argues that simply because Dr. Sarver gave Plaintiff the diagnosis of adjustment disorder does not mean the ALJ must incorporate mental imitations into the Plaintiff's RFC. While such a statement is technically correct, it misconstrues the ALJ's decision. As explained above, while an ALJ need not determine a claimant has a severe impairment simply because the record shows he has a certain diagnosis, the issue here is that the ALJ determined that the Plaintiff's diagnosis of adjustment disorder was a severe impairment, but then failed to acknowledge that it posed any limitations to Plaintiff's work capabilities.

15

The Commissioner's second contention is more precise, which is that the Magistrate Judge erred in finding that the ALJ was obligated to include mental limitations in Plaintiff's RFC simply because he found that the Plaintiff's adjustment disorder was a severe impairment. By way of background,

> [i]f a claimant has a severe impairment limiting "her mental or physical ability to do basic work activities" but not constituting a listed impairment in Appendix 1 of the Social Security regulations, the Commissioner asks, at Step Four, "whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform ... her past work." *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir.2000) (citing *DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir.1998)). Social Security Ruling 96–8p provides that an individual's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).
>
> Before an ALJ classifies a claimant's RFC based on exertional levels of work (*i.e.,* whether the claimant can perform sedentary, light, medium, heavy, or very heavy work), he "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." *Id.* at *1. The functions described in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945 include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions; mental abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors. *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96–8p, 1996 WL 374184, at *5–6. Social Security Ruling 96–8p cautions that "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions," which "could lead to an incorrect use of an exertional category to find that the individual is able to do past relevant work" and "an erroneous finding that the individual is not disabled." 1996 WL 374184, at *4.

*Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). This Court agrees with the Magistrate Judge that based on this framework, it is only logical that since by definition a severe impairment limits a claimant's "mental or physical ability to do basic work activities," this Court can presume that some limitation would ultimately be incorporated into the RFC pursuant to a finding that an impairment is severe.  In this case, however, the ALJ deemed Plaintiff's

limitation in social functioning to be moderate at step three—which this Court can only assume formed the ground for labeling the disorder severe at step two as it was the only mental limitation identified at step 3—but the ALJ ultimately declined to incorporate that limitation into the RFC. The ALJ reasoned that he did not need to credit Dr. Saver's opinion regarding Plaintiff's social functioning because it was attributable to substance abuse, and to Plaintiff's self-reporting, only. The ALJ cannot have it both ways—he cannot deem a disorder to be severe at step two, and include a single limitation identified with that disorder at step three, and then entirely dismiss that singular limitation associated with the severe impairment while fashioning an RFC. When assessing Plaintiff's RFC, if the ALJ ultimately found that Plaintiff had no limitations, he should have reached that determination at step two, not when fashioning the RFC, and found that Plaintiff's disorder was not severe. Since the ALJ determined at step two that the Plaintiff indeed had some limitations, he should have determined their contours when fashioning the RFC.

Beyond that, this Court agrees that the ALJ's failure to incorporate into the RFC any of Plaintiff's mental impairments identified by Dr. Saver was procedurally unsound on a number of other levels. First, the ALJ erred in his treatment of the mental functioning limitation which he acknowledged—i.e., that Plaintiff has limitations in social interactions with his peers. Second, the ALJ erred in completely ignoring large portions of Dr. Saver's opinion which included additional functional limitations.

The Sixth Circuit in *Delgado v. Comm'r of Soc. Sec.* held that "[a]lthough SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." 30 Fed. App'x. 542, 547 (6th Cir. 2002).  Further, the Sixth Circuit adopted the Third Circuit's rationale in

*Bencivengo v. Comm'r of Soc. Sec.,* 251 F.3d 153 (table), No. 00–1995 (3d Cir. Dec. 19, 2000),

holding that the ALJ need not produce a detailed application of SSR 96-8p in writing, but "need

only articulate how the evidence in the record supports the RFC determination, discuss the

claimant's ability to perform sustained work-related activities, and explain the resolution of any

inconsistencies in the record." *Id.* at 548 (citing *Bencivengo*, slip op. at 5). The Magistrate Judge

was correct to find that the ALJ's application of SSR 96-8p to Dr. Saver's opinion fell short of

the standard in *Delgado* because it did not "fully specify" all of Plaintiff's nonexertional

capacities, *see Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 729 (6th Cir. 2013) (citing

*generally Delgado*, 30 Fed. App'x. at 547–48), nor did it resolve inconsistencies in the record

properly.

  First, the ALJ gave Dr. Saver's opinion regarding Plaintiff's limited social functioning

and poor prognosis limited weight, apparently because it was based on the claimant's self-

reporting and was not supported by the medical evidence of record. By granting limited weight

to Dr. Saver's opinions, the ALJ ultimately declined to incorporate any limitations in mental

functioning into Plaintiff's RFC. It is curious, however, that the ALJ concluded that Dr. Saver's

opinion contradicted record evidence, as the opinion makes no other reference to any other

record evidence regarding Plaintiff's mental functioning. Thus, as the Magistrate Judge

concluded, the ALJ must have determined that portions of Dr. Saver's own report contradicted

his conclusion that Plaintiff had mental limitations. This can only mean that the ALJ credited

portions of the report that supported a finding of no limitation, while dismissing any portions

showing limitation. As will be explained below, this picking-and-choosing from Dr. Saver's

opinion when fashioning an RFC results in a mischaracterization of the record evidence that does

not adequately resolve record inconsistencies, falling short of the standard in *Delgado* for

18

determining Plaintiff's RFC. Further, as the Magistrate Judge indicated, "[m]ental disorders are not uncommonly diagnosed after one interview," which is commonly dependent on a patient's self-reporting. *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989). Thus, Plaintiff's self-reporting, alone, without any other rationale, is insufficient to discount Dr. Saver's opinions concerning his social functioning.

This transitions this Court into the second problem with the ALJ's analysis of Dr. Saver's opinions, which is that the ALJ's application of Dr. Saver's findings at step 3, before step 4 to the RFC determination, and at step 4 ignored large portions of Dr. Saver's findings regarding Plaintiff's work limitations, while giving decisive weight to other portions, without explanation. Specifically, the ALJ's decision nowhere indicates that the ALJ considered that Dr. Saver found that Plaintiff's "personality disorder is predictive of intense and unstable relationships. It is likely that he will consistently encounter contentious relationships with supervisors and coworkers in the work setting." Admin. Record, Exh. 5F, ECF 1107, PAGEID# 493. Further, the ALJ's opinion contains no evidence that the ALJ considered that Dr. Saver found limitations in Plaintiff's ability to respond appropriately to pressures in a work setting: "He is likely to have difficulty containing his anger, managing his frustration, and controlling his impulses. He is likely to depend upon other people and/or situations to structure life for him. He is likely to consistently have difficulty adaptively managing normative work pressure." *Id*. at 494. Instead, at step two, the ALJ relied only on Dr. Saver's opinion that Plaintiff had an adjustment disorder, and then at step three relied only on a selective portion of Dr. Saver's assessment to conclude that Plaintiff's only limitation from that disorder is that he has moderate difficulties in social functioning because he usually keeps to himself and does not like to show his feelings. That, in turn, was the only limitation that the ALJ considered when fashioning the Plaintiff's RFC. This

runs afoul of the regulations: "administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. § 404.1527(f)(2)(i); *see also Hash v. Comm'r of Soc. Sec.,* 309 Fed.Appx. 981, 989 (6th Cir. 2009).

Thus, what it appears the ALJ did is use the label of "limited weight" to grant himself license to credit those portions of Dr. Saver's opinion with which he agrees and which support a finding of no limitations in the RFC (that Plaintiff does have some limits on interacting with others, but plaintiff has some friends, and his poor prognosis is only related to substance abuse), and completely ignore other portions (that he has a long history of unstable relationships since his youth, problems with authority, difficulty structuring and managing his life and adapting to work pressure). This he does without any reasoned explanation. Ultimately, the ALJ's practice of picking and choosing from Dr. Saver's opinion amounts to a "mischaracterization" of Plaintiff's mental impairments as determined by a state-sanctioned psychologist, which the Sixth Circuit has determined constitutes reversible error because it warrants a finding that the ALJ's RFC determination is not based on substantial evidence. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 191-92 (6th Cir. 2009) (holding "the ALJ's mischaracterization of Simpson's limitations (or lack thereof) warrants a finding that the ALJ's decision is not based on substantial evidence"); *see also White v. Comm'r of Soc. Sec.,* 312 Fed. App'x. 779, 787-88 (6th Cir. 2009).

Further, such an error is not harmless because a failure to properly characterize the record evidence can lead to an "improper calculation" of a claimant's RFC, which informs the hypothetical question, upon which the ALJ relies to determine whether the claimant can do work. *Id*. at 191-92 (citing *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir. 2002) (holding that the "hypothetical question posed to a [vocational expert] for purposes of determining

whether [claimant] can perform other work ... should include an accurate portrayal of her individual physical and mental impairments") (citations and internal quotation marks omitted), and *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (discussing *Howard* and noting that "a denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity ... must be reversed")). Further, remanding this case is not a mere formality, as it "would propel [our Court] into the domain which Congress has set aside exclusively for the administrative agency, if we were to determine the jobs available to [a claimant] based upon her limitations." *Id*. at 192 (citations and quotation marks omitted).

Finally, contrary to the Commissioner's insistence, the ALJ's mischaracterization of the evidence while fashioning Plaintiff's mental residual functioning capacity cannot be saved by the fact that Dr. Saver considered in his findings that the Plaintiff suffered from drug abuse. The Commissioner properly notes that "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioners determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). According to the Commissioner's regulation, however, "[t]he key factor" in determining whether drug or alcohol abuse is material in a given case is whether the claimant would still be disabled if he or she stopped using drugs or alcohol. 20 C.F.R. § 404.1535. Thus, according to the regulations and the Sixth Circuit, "[s]ubstance abuse is not considered until the Commissioner first makes a finding that a claimant is disabled." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013), reh'g denied (May 2, 2013) (citing 20 C.F.R. § 404.1535 ("If we find that you are disabled ... we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.").

21

The ALJ never found Plaintiff to be disabled. Thus, as the Sixth Circuit explained in *Gayheart*, it was improper for the ALJ to consider the Plaintiff's drug or alcohol abuse within his decision-making process, particularly when giving no weight to Dr. Saver's opinion concerning Plaintiff's mental functioning and when fashioning Plaintiff's RFC based on Dr. Saver's opinion. *Id.* ("alcohol abuse is not a factor to be considered in determining the weight to be given to a [medical] opinion. *See* 20 C.F.R. § 404.1527(c)."). Instead, it was only if the ALJ had ultimately found Plaintiff to be disabled that the ALJ would have been permitted to assess the materiality of drug or alcohol abuse. *Id.* Thus, Plaintiff's substance abuse problems could not have been the basis of showing an inconsistency within Dr. Saver's opinion that Plaintiff had a number of mental limitations.

In sum, this case must be remanded for further consideration of Dr. Saver's opinions, and a proper incorporation of his opinions into Plaintiff's residual functional capacity.

## IV.    CONCLUSION

Based on the foregoing, this Court **ACCEPTS and AFFIRMS** the Magistrate Judge's Report and Recommendation and sustains Plaintiff's Statement of Errors. Thus, the Commissioner's Objections are **OVERRULED**. This action is hereby **REMANDED** to the Commissioner for reconsideration in accordance with this Order, pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS SO ORDERED.**

  ___s/ Algenon L. Marbley_____
  **ALGENON L. MARBLEY**
  **UNITED STATES DISTRICT JUDGE**

**DATED:  September 15, 2015**